EUGENE L. CROWSON, JONATHAN (DOC) CROWSON and EGBERT CROWSON v. MARY CROWSON, RUTH CROWSON, M. LOGAN GUTHRIE, Guardian, J. A. DICKINSON, Trustee, and ROSA E. WILLIAMS, Appellants.—19 S. W. (2d) 634.

Division Two, August 6, 1929.

*Baker & Baker* for appellants.

*N. T. Cave* for respondents.

HENWOOD, C.—This suit originated in the Circuit Court of Callaway County, where the plaintiffs filed their petition in two counts: first, to construe a will and thereby determine the title to certain real estate; and second, for partition of said real estate. The trial court found for the plaintiffs on both counts and rendered judgment accordingly. The defendants appealed.

The agreed statement of facts, on which the case was submitted, and the copy of the will attached thereto, read as follows:

"AGREED STATEMENT OF FACTS.

"Come now N. T. Cave, attorney for the plaintiffs, and J. R. Baker, attorney for the defendants, and agree and stipulate that the following facts are admitted to be true, and that said agreed statement of facts may be introduced and read in evidence in said cause and be considered as true.

"1. That one Richard T. Crowson departed this life on or about March 4, 1899, residing in Callaway County, Missouri, and seized and possessed of a fee simple title in and to the real estate described in plaintiffs' petition (West half of Southwest quarter and South half of Northwest quarter and West half of East half of Southwest quarter, Section 14, Township 48, Range 10, containing 200 acres, situate in Callaway County, Missouri).

"2. That Richard T. Crowson and R. T. Crowson are one and the same person.

"3. That the said Richard T. Crowson (R. T. Crowson) departed this life testate; and that the hereto attached written instrument is a true and correct copy of the last will and testament of the said Richard T. (R. T.) Crowson. That thereafter and in due time said will was admitted to probate in the Probate Court of Callaway County, Missouri, and the widow, Minnie Crowson, was appointed execu-

trix of said will and administered upon said estate and was finally discharged as said executrix by said probate court.

"4. That soon after the death of the said Richard T. Crowson and the admission of said will to probate the plaintiffs in this case instituted a suit in the Circuit Court of Callaway County, Missouri, to set aside such will, which case is reported in the Supreme Court Reports of Missouri, volume 172, page 691.

"5. That the said Richard T. Crowson was first married to —— Crowson, who departed this life many years prior to the death of the said Richard T. Crowson, and that by said first wife he had the following children: Eugene L. Crowson, Jonathan (Doc) Crowson and Egbert Crowson, who are the plaintiffs in this case; that at the time said will was made all three were grown, out in the world working for themselves, and established in business; that a number of years after the death of his first wife the said Richard T. Crowson married Minnie Crowson, and by his second wife had the following children: Edmund Crowson, Mary Crowson and Ruth Crowson, who, at the time said will was made, were eight, five and two years respectively; that after the said Edmund Crowson reached his majority and before the death of Minnie Crowson he conveyed his interest in the real estate herein involved by quitclaim deed to the defendants Mary Crowson and Ruth Crowson.

"6. That about the year 1916, the widow, Minnie Crowson, became a person of unsound mind, and that the defendant M. Logan Guthrie was the duly appointed, qualified and acting guardian of said Minnie Crowson until her death. That on March 30, 1926, the said widow, Minnie Crowson, departed this life intestate, without having remarried after the death of the said Richard T. Crowson.

"7. That on or about November 21, 1916, M. Logan Guthrie, as guardian of Minnie Crowson and under and by order of the Probate Court of Callaway County, Missouri, borrowed from Rosa E. Williams the sum of $600 for the support and maintenance of the said widow, Minnie Crowson, and executed a promissory note therefor in the sum of $600, and further executed a deed of trust conveying the real estate described in plaintiffs' petition to the defendant J. A. Dickinson to secure the payment of said $600 note; and that said $600 note and deed of trust is still an outstanding lien on said land described in plaintiffs' petition. That on the same date the defendants Mary Crowson, Ruth Crowson and Edmund Crowson executed and delivered to the defendant Rosa E. Williams a promissory note in the sum of $1400 and made and executed and delivered a deed of trust conveying their interest in the real estate described in plaintiffs' petition to the defendant J. A. Dickinson as trustee to secure the payment of said note in the sum of $1400; and that the same is still an outstanding lien against their interest in said real estate. That

the said Edmund Crowson never married and has since departed this life without leaving any children or bodily heirs; and that the $1400 note and deed of trust was used by the said Mary Crowson, Ruth Crowson and Edmond Crowson and is a lien upon their interest in the real estate described in plaintiffs' petition.

"8. It is further admitted that the real estate involved herein is not subject to partition in kind without great prejudice to the parties interested therein.

"9. It is further admitted that Eugene L., Jonathan, and Egbert Crowson never accepted the bequest of one dollar each made to them."

COPY OF WILL.

"I, R. T. Crowson, of the County of Callaway and State of Missouri, realizing the certainty of death and being now of sound mind and disposing memory, do hereby make and publish this my last will and testament, hereby revoking all former wills.

"First. I will and bequeath to my wife all my real and personal property—after paying all my just debts to be held in trust by her during her widowhood or lifetime, for her support and the support and education of her children. *If she marries again* she is to have her lawful dower and the remainder to be divided between my younger children, Edmond, Mary and Ruth except one dollar each to my older children Eugene L., Jonathan and Egbert—I hereby appoint my wife as executrix to carry out this will. [Our italics.]

"We do hereby certify that R. T. Crowson signed the above and foregoing instrument of writing in our presence. He at the time declaring it to be his last will and testament, and we hereto sign our names as witnesses at his request, and in his presence and in the presence of each other. And we hereby certify that at the time he so signed said instrument of writing he was of sound mind and disposing memory.

"Witness our hands this 2nd day of March, 1899.

"(Signed) R. T. CROWSON.
"JNO. T. BEAVEN,
"J. B. TRIMBLE,
    "Witnesses."

The sole issue under the pleadings is an issue of law arising out of the construction of the will of R. T. Crowson, above quoted. It is conceded that the testator devised the land in question to his wife, in trust, during her widowhood or lifetime, for her support and the support and education of her children, being his children by his second marriage. It is also conceded that, *in the event of his widow's remarriage,* she was to have her lawful dower in said land and the remainder was to be divided among her said children by him, except

the nominal sum of one dollar bequeathed to each of the plaintiffs, being his "older children," or children by his first marriage. But, the plaintiffs contend that the testator made no disposition of the reversionary interest in said land, *in the event of his widow's death without remarriage;* and that therefore they (the plaintiffs) and the defendants Mary Crowson and Ruth Crowson and the grantees of Edmond Crowson should share the reversionary interest in said land, under the laws of descent. The defendants deny that the testator died intestate as to such reversionary interest, and, on the contrary, contend that, by express terms in his will and reasonable implication, the reversionary interest in said land passed to Mary, Ruth and Edmond Crowson, his children by his second marriage, *upon his widow's death, although she did not marry again.*

As above indicated, the trial court construed the will in accordance with the contention of the plaintiffs, and found and adjudged that the plaintiffs are entitled to an undivided one-half interest, or a one-sixth interest each, in said land, subject to the satisfaction of the deed of trust executed by the guardian of the testator's widow as security for the loan of $600, and that the defendants Mary Crowson and Ruth Crowson are entitled to an undivided one-half interest, or a one-fourth interest each, in said land, subject to the satisfaction of the deed of trust above mentioned and the deed of trust executed by said defendants and Edmond Crowson, as security for the loan of $1400; and further adjudged that said land be sold in partition and the proceeds of said sale distributed among the parties according to their respective interests.

The language of the will is complete, plain and unequivocal. Considering the will as written, the intention of the testator seems perfectly clear. After devising all of his property to his wife, in trust, for her support and the support and education of her children (Edmond, Mary and Ruth) during her widowhood or lifetime, he says: *"If she marries again* she is to have her lawful dower and the remainder is to be divided between my younger children, Edmond, Mary and Ruth except one dollar each to my older children Eugene L., Jonathan and Egbert." This far, but no farther, did the testator express his intention. As to who was to have "the remainder," *if his widow died without marrying again,* this solemn instrument, around which the law throws so many safeguards, is silent. Did he die intestate as to "the remainder," *in such event?* We think he did.

The first rule to be applied in construing a will is to determine the intention of the testator, and that intention must be determined from the language used, in the light of the surrounding circumstances. [40 Cyc. 1431-b; Sec. 555, R. S. 1919; Allison v. Hitchcock (Mo.), 274 S. W. l. c. 799.] The agreed statement of facts sheds no light on the situation of the testator, at the time he made his will, except

that his children by his first marriage "were grown, out in the world working for themselves, and established in business," and that his children by his second marriage "were eight, five and two years (of age), respectively." Counsel for the defendants invoke the presumption against partial intestacy, and, in connection therewith, argue that, because the testator expressly provided for the support and education of his minor children during his wife's widowhood or lifetime, and because he expressly devised to them "the remainder" of his estate, subject to his widow's dower, *in the event she married| again,* he intended to devise to said children "the remainder" of his estate, *upon his widow's death, if she did not marry again,* and that, in order to carry out his intention, we should insert in his will, after the words, "lawful dower," the words, "or in case of her death." In support of this argument, counsel cite Paris v. Erisman, 300 S. W. 487, and similar cases, wherein this court held that words may be supplied, rejected or transposed, for the purpose of correcting palpable errors of the scrivener, thereby preserving the real intent of·the testator. It is apparent at once that the rule followed in those cases has no application here. In this case, there is no suggestion of any errors or omissions on the part of the scrivener, nor that he did not write exactly what the testator intended to be written. [Dunlap v. Hart, 274 Mo. 600, 204 S. W. 525.] The presumption against partial intestacy is of no avail where the plain and unequivocal language of the testator shows a contrary intention. [40 Cyc. 1409-b; Allison v. Hitchcock, supra.] And where the language used by the testator is plain and unequivocal the court cannot give it a different meaning, for the purpose of carrying into effect a conjecture or hypothesis of the testator's intention, by supplying, rejecting or transposing words or phrases. [40 Cyc. 1402; Allison v. Hitchcock, supra; Dunlap v. Hart, supra; Board of Trustees v. May, 201 Mo. 360, 99 S. W. 1093; Sanitarium v. McCune, 112 Mo. App. 332, 87 S. W. 93.] "It is not the province of the court to make a will, nor to change the ordinary meaning of the words used therein." [Board of Trustees v. May, supra.] "The courts have no right to make a new will for the testator nor have they the right to say what the testator should have meant to do nor what words the testator meant to use, but the true province of the court is to ascertain from the will what the testator meant by the words he actually used. [Page on Wills, sec. 460; Records v. Fields, 155 Mo. 321, 55 S. W. 1021.] And in the absence of manifest intent to the contrary, it is the plain duty of the court to give to the words employed in the will their plain and usual sense and arrive at a conclusion therefrom. Under these rules the courts are always careful to discover the intention of the testator as expressed and enforce that intention." [Sanitarium v. McCune, supra.] In so far as the testator expressed his intention, he did so

plainly and unequivocally, and, in our opinion, there is nothing in the language used, nor the surrounding circumstances, to justify the conclusion that he intended to say more. Counsel reach that conclusion by speculation. We are not permitted to speculate as to the testator's intention. To write into the will the words suggested by counsel, under such circumstances, would do violence to well-established rules of construction, as shown by the authorities above cited.

It follows from what has been said that we are in full accord with the views of the trial court in construing the will and in adjudging the rights of the parties. The judgment rendered below is accordingly affirmed. *Davis* and *Cooley, CC.*, concur.

PER CURIAM:—The foregoing opinion by Henwood, C., is adopted as the opinion of the court. All of the judges concur.