**Joyce Kathleen WILSON, Personal Representative of the Estate of Floy J. Stanley, Deceased, Respondent,**

v.

**Leo Grant MILLIGAN, Appellant.**

**No. WD 36712.**

Missouri Court of Appeals, Western District.

April 1, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 22, 1986.

Robert G. Duncan, Kansas City, for appellant.

Leary G. Skinner, Hale, Kincaid, Waters & Allen, Liberty, David H. Miller, Richmond, for respondent.

Before CLARK, C.J., and TURNAGE and KENNEDY, JJ.

CLARK, Chief Judge.

In this declaratory judgment action, Joyce Wilson, as personal representative of the Estate of Floy J. Stanley, sought a determination of the validity of three promissory notes and the deeds of trust purportedly given to secure payment of the notes, all of which were executed by L. Grant Milligan. After a bench trial, the court ruled the notes to be enforceable obligations owed by Milligan and the deeds of trust to be encumbrances on the real estate described. Milligan appeals.[1]

It appears to be undisputed that following the death of Floy Stanley, who was Milligan's sister, three notes and deeds of trust were found among the papers of the deceased. The notes were dated August 4, 1974, March 8, 1977 and September 17, 1978 and were in the amounts of $50,-000.00, $50,000.00 and $70,000.00. The last note was secured by a deed of trust bearing the same date as the note. The deed of trust securing the earliest dated note was shown as signed June 17, 1981 and the note of March 8, 1977 was secured by a deed of trust dated June 5, 1981. The notes were all payable on demand and the signatures of Milligan to all the documents are unquestioned.

■ The declaratory judgment petition alleged that the personal representative had made demand on Milligan for payment of the notes but he had refused on the ground no debt was owed. The petition also alleged that an adequate remedy at law was not available because action taken against the security under the deeds of trust could result in a claim of wrongful

---

1. Separate counts by Wilson against parties named Wynne regarding a contract for deed were decided in favor of Wilson. Milligan's counterclaim asserting an interest in the contract for deed property was denied. The Wynnes have not appealed and Milligan raises no claim of error concerning disposition of that phase of the case.

foreclosure.[2] Milligan's answer asserted in defense of the claims that the notes were given to Floy Stanley as a straw party who had no real interest in the notes or the real estate and that no consideration was paid for the notes.

At trial, the plaintiff's case was made by the testimony from Wilson that the notes and mortgages had been found among the personal effects of the deceased and by the introduction into evidence of the documents. In his defense, Milligan and witnesses he called attempted to testify that Floy Stanley had advanced no funds on account of the notes nor was there any pre-existing debt. The proffered testimony was to the effect that the documents were signed to conceal Milligan's assets from his then wife with whom he was involved in a suit for divorce. All of this evidence was, however, excluded on the ground that § 491.010, RSMo.Cum.Supp.1984,[3] The Dead Man's Statute, barred Milligan from testifying as to the details of his transactions with the deceased and that Milligan's witnesses Juanita Cavanaugh and Charles Wynne were similarly precluded from testifying. Milligan recognizes the bar of the statute, at least as to his own testimony regarding the arrangements with the deceased to prepare and deliver the sham instruments, but he says the trial court erred in its ruling because respondent waived the statute.

The facts underlying the issue of waiver are these. Milligan called David Miller, an attorney, as a defense witness. Miller was the trustee named in the deeds of trust and had prepared at least two of them at the deceased's request. After Miller's direct examination he was questioned by respondent's attorney and asked: "Did you have any conversation with her (Floy Stanley) about those notes?" Miller replied, " * * * she simply indicated that over the years there had been loans made to Mr. Milligan and, due to his current problems, he wanted to see that she was secured such that she would be repaid eventually for the monies she had extended." Milligan argues that this evidence refers directly to the issue of consideration for the notes and opens the door to similar testimony which he would be entitled to present on the subject.

Waiver of the Dead Man's Statute by the protected party is recognized in two evidentiary settings. The first occurs when the protected party offers testimony of the party barred by the statute and the second, when the protected party introduces testimony by the deceased preserved in some recorded form. *Bolin v. Anders*, 559 S.W.2d 235, 244 (Mo.App.1977). Cases cited by appellant will serve to illustrate application of the waiver doctrine in the two situations.

In *Moore v. Adams' Estate*, 303 S.W.2d 936 (Mo.1957), Moore had filed a claim against the estate for money due from the deceased for repair and maintenance of certain property. Called as a witness on his own behalf, Moore only identified and introduced in evidence his own records where the items in issue were recorded. On cross-examination, counsel for the estate inquired as to Moore's conversations with the deceased and the terms of their agreement. This cross-examination eliciting from Moore his version of the oral contract upon which his claim was based was held to have waived the statute. Moore's disqualification as a witness to testify regarding

2. The question of the availability to respondent of a declaratory judgment action under these facts has not been raised but is apparent from the statement of facts. The remedy of declaratory judgment is expressly made available to the personal representative of an estate by § 527.-040, RSMo.Cum.Supp.1984, but only as an aid to resolve questions of construction of wills and other writings. The general rule is that declaratory relief is not available except where the remedy at law is inadequate. *Love Mortgage*

*Properties, Inc. v. Horen,* 639 S.W.2d 839 (Mo. App.1982). Respondent here had the obvious remedy at law of suing on the notes or resorting to judicial foreclosure. Section 443.190, RSMo. 1978.

3. The statute has now been modified, § 491.010, RSMo.Supp.1985, and the preclusion of testimony relative to transactions with a deceased person has been eliminated.

the contract with the deceased was thereby removed.

The second example of waiver by introduction of testimony by the disqualified party is found in *Prentzler v. Schneider*, 411 S.W.2d 135 (Mo. banc 1966). There, an automobile accident had resulted in two suits, each by the widow of one of the deceased drivers. The action of *Schneider v. Prentzler* was tried first and resulted in a judgment for the plaintiff. Mrs. Prentzler was the only surviving witness to the accident and she testified in the first trial. In the second trial, the defendant offered a transcript of Mrs. Prentzler's testimony given in the first trial. By so doing, even though the transcript was offered only to support a motion for summary judgment, the defendant waived any incompetency of the witness under the statute. Mrs. Prentzler was thereafter qualified as a witness to testify regarding the accident.

The other category of waiver, the introduction by the protected party of statements by the deceased is illustrated by the case of *Hodge v. Conley*, 543 S.W.2d 326 (Mo.App.1976). There Hodge had brought a suit for partition of real estate and one of the questions was whether title had descended to Orel Conley as the surviving tenant by the entirety. That question depended, in turn, on whether Orel and his deceased spouse, Ora, had been married at the time the deed to the property had been given. The plaintiff introduced in evidence another deed executed by Ora dated some five years subsequent to the deed in question and in which Ora made affirmative statements about the date of her marriage to Orel and the fact they were not married when title to the property was obtained. The court held introduction of the preserved statements by the deceased regarding the question of the marriage date waived the Dead Man's Statute and Orel

was thereby rendered competent to testify about the same subject.

█ The present case in which appellant contends the personal representative waived appellant's disqualification as a witness by the questions put to attorney Miller does not come within either of the waiver situations discussed above. To the contrary, it is very nearly identical to *McCracken v. Schuster*, 179 S.W. 757 (Mo. App.1915). There, the dispute concerned an oral agreement for rental of a farm by McCracken who subsequently died. The fact issue was whether McCracken had rented the farm to Schuster or whether Schuster was a subtenant of Hass. The agreement had been made in the office of James Anderson, a lawyer. At the time, however, Anderson was not acting as attorney or agent for any of the parties. Anderson was called as a witness by the McCracken heirs and testified as to the terms of the oral agreement. Anderson was held to have been "an ordinary witness" who had merely heard the conversation between the actual parties. The use of Anderson's testimony by the protected parties did not waive the statute.

In this case, respondent made no objection to Miller's competency under the statute when he was called by appellant to testify and there is no assertion now by either party that Miller was disqualified.[4] Although there is no question but that a waiver may occur on cross-examination, *Johnson v. Dur-Est, Inc.*, 224 S.W.2d 611 (Mo.App.1949), that will only be the consequence where the protected party examines a witness who is himself disqualified and the evidence comes in under the auspices of the protected party or without his objection. Neither situation appears here. The trial court therefore correctly ruled that Milligan was not rendered competent as a witness by respondent's questioning of Miller.

**4.** There is a substantial question as to whether Miller was in fact a qualified, disinterested witness. Two of the deeds of trust in issue prepared by Miller named him as trustee. In a similar fact situation, it was held in *Allaben v. Shelbourne*, 357 Mo. 1205, 212 S.W.2d 719

(1948) that the trustee under a deed of trust was an interested party in a suit to annul a note and the Deed of Trust securing it and that the trustee was barred from testifying by the Dead Man's Statute.

In the same point of error, Milligan contends the trial court also erred in sustaining respondent's objections to the competency of witnesses Charles Wynne and Juanita Cavanaugh under the statute. The statement of the point commingles several potential contentions and the argument is terse to the extent of being no more than cursory. The trial record suffers the same defects. As best the contentions can be related, however, appellant says Wynne and Cavanaugh were not parties to nor interested in the notes and deeds of trust or the agreements which underlay those instruments and therefore Wynne and Cavanaugh were not disqualified from testifying under § 491.010, RSMo.Cum.Supp.1984.

First considering the disqualification of witness Cavanaugh, the trial record shows Miss Cavanaugh resided rent free on a farm owned by appellant but not occupied by him. Cavanaugh had no lease or rental agreement and was therefore merely on the property at the sufferance of appellant. The record also suggests that the farm was among the properties included in the deeds of trust in issue. Cavanaugh was not contended to have any obligation under the notes or deeds of trust nor any ownership interest in the property. According to appellant's offer of proof, if permitted to testify, Cavanaugh would relate statements made by the deceased when the notes in question were signed. The general import of the deceased's remarks were that the transactions in question were a sham without payment of any consideration.

According to statements made by respondent's attorney to the trial court and the argument in the brief here, Cavanaugh's disqualification under the Dead Man's Statute rested on her possessory interest as an occupant of the Milligan farm. Respondent asserted that the prospect of ultimate foreclosure of the property under the deed of trust and the consequent dispossession of Cavanaugh gave her an interest in the subject of the notes and deeds of trust and made her incompetent to testify as to the transaction between the deceased and Milligan.

The statute, § 491.010, RSMo.Cum. Supp.1984, contains two provisions relative to claims where one of the parties has died. The transactions proviso renders a witness incompetent only as to matters the decedent could have testified to if alive. The administration proviso absolutely bars testimony by the surviving party to a contract if the other party is an executor or administrator and the subject upon which the testimony is offered occurred prior to probate of the will or prior to appointment of the administrator. *Flanagan v. DeLapp*, 533 S.W.2d 592, 597 (Mo. banc 1976). The administration proviso is obviously inapplicable here because Cavanaugh was not a party to the notes or deeds of trust. She could be disqualified only under the transactions proviso.

Under the transactions proviso, it is also apparent Cavanaugh was not disqualified. An interest to disqualify a witness under the Dead Man's Statute must be a legal interest as distinguished from prejudice, bias or any other domestic, social or official relation or any other motives by which men are generally influenced. *Martin v. Abernathy*, 220 Mo.App. 76, 278 S.W. 1050 (1926). Moreover, to be rendered incompetent under the transactions proviso, the witness must be both interested and be a party to the contract or cause of action. *Galemore v. Haley*, 471 S.W.2d 518, 521 (Mo.App.1971). Cavanaugh did not, by the mere possibility of losing the benefits of rent-free accommodations, become disqualified as a witness because she had no legal interest in the subject of the suit. The court erred in rejecting the testimony of Cavanaugh as a witness.

The issue as to witness Wynne is controlled by essentially the same precepts applicable to Cavanaugh, although the trial court's basis for rejecting the testimony of Wynne was different. The suit by respondent personal representative was in three counts only the first of which involved the notes and deeds of trust mentioned earlier. The second two counts involved a contract for sale of land to Wynne and his wife

entered into by the deceased some time prior to her death. As alleged in the petition, Milligan claimed the deceased had held the property as a straw party and in consequence, Milligan was entitled to the payments from Wynne under the contract. The relief sought in Counts II and III was a declaration that respondent personal representative and not Milligan was the owner of the real estate and entitled to the contract payments. The Wynnes were named as defendants in Count III but not in Count II.[5]

■ Respondent argued at trial and reasserts here that Wynne was disqualified from testifying because he was a party to the lawsuit and, under the administration proviso, he was automatically an incompetent witness because of respondent's status as administrator of the estate. The court's ruling, which sustained objection to testimony by Wynne, overlooks the fact that Wynne was not a party to nor interested in the dispute about which he was to testify, the existence or absence of consideration for the notes. There was no relationship shown at all between the Count I subject and Count III in which the Wynnes were defendants. The mere fact that Wynne was a party in another dispute did not render him incompetent as a witness generally, only as to the subject in which he was interested. The court erred in refusing the proffered testimony of witness Wynne.

The foregoing discussion, although rendered academic by the subsequent revision of the Dead Man's Statute, recites the law which was applicable when this case was tried and has been indulged to establish the basis for disposition of the appeal. On retrial, admission of evidence will be in accordance with the then current statute law.

The judgment as to Count I of plaintiff's petition is reversed and the case as to that count is remanded for a new trial.

All concur.

5. Judgment on Counts II and III and on the counterclaim of Milligan was rendered in favor of respondent. Neither Milligan nor the

Wynnes have appealed disposition of the personal representative's claim to the contract of sale proceeds.